## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Case No. 1:21-cv-02681-RM-NRN

JENNIFER VINCENZETTI and ALICIA GRUMET,
on behalf of themselves and those similarly situated;

      Plaintiffs,

v.

AMAZON.COM SERVICES LLC;

      Defendant.

---

## AMENDED CLASS ACTION COMPLAINT

---

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

2.      There is "minimal diversity" because Defendant is a foreign business entity and a substantial portion of the proposed class, including Plaintiffs, are Colorado residents.

3.      Within the applicable statute of limitations, Defendant had thousands, and likely well over 10,000, employees in Colorado subject to Defendant's alleged off-the-clock pay policies.

4.      Class-wide damages for the thousands of employees is well in excess of $5 million.

5.      Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in Colorado.

## PARTIES

6.      At all times material to the allegations of the complaint, Plaintiffs were domiciled in the District of Colorado.

7.      At all times material to the allegations of the complaint, Defendant AMAZON.COM SERVICES LLC (hereinafter, "Amazon") was a Delaware limited liability company with its principal place of business in Washington state.

8.      At all times material to the allegations of the complaint, Amazon was registered with the Colorado Secretary of State to do business in Colorado and in fact did do business in Colorado.

## STATEMENT OF FACTS

**I.    Amazon's Operations**

9.      Amazon operates a sprawling international online retail shopping business that allows customers to order goods online and have those orders fulfilled and delivered through Amazon's expansive fulfillment network.

10.     Amazon's "fulfillment network is made up of state-of-the-art technology and a variety of building types and sizes to support processing orders, but it's truly [Amazon's] people who bring the magic of Amazon to life for our customers."

11.     Amazon operates innumerable warehouses across the United States, and the world, to facilitate this fulfillment.

12.     Each of these warehouses employs hundreds, and often thousands, of hourly employees.

13.     Some warehouses pick, pack, and ship orders for Amazon's customers, while others sort already packed customer orders for faster delivery to final destinations.

14.     Amazon currently runs at least the following warehouses in Colorado:

2

#### **#DDV5** 2889 Himalaya Drive, Aurora, Colorado, 80011

#### **#DEN2** – 24006 E. 19th Ave., Aurora, CO 80019-3705

#### **#DEN3** – 14601 Grant Street Thornton CO 80023-6622

#### **#DEN5** – 19799 E 36th Dr, Aurora, CO 80011

#### **#DCS3** – 4303 Grinnell Blvd, Colorado Springs, CO 80925

15.    # DEN6 – 480 E. 55th Ave, Denver CO 80216Amazon's warehouses include distribution centers and fulfillment centers.

## II.    Plaintiff Vincenzetti's Employment by Amazon

16.    Plaintiff Vincenzetti worked for Amazon at two Colorado Springs warehouses in or about October 2018 to in or about December 2020.

17.    Plaintiff Vincenzetti generally was on the clock for 4 days a week, 10 hours a day.

18.    At all times, Plaintiff Vincenzetti was a non-exempt hourly employee.

19.    Plaintiff Vincenzetti's job consisted principally of sorting already packed packages and routing them for delivery.

20.    Amazon had the power to, and in fact did, hire and fire Plaintiff Vincenzetti and those similarly situated.

21.    Amazon hired Plaintiff Vincenzetti in 2018 and fired her in 2020 for returning from a break late.

22.    Amazon set the rate of pay for Plaintiff Vincenzetti and those similarly situated.

23.    Amazon maintained employment records for Plaintiff Vincenzetti and those similarly situated, including providing a platform called "Amazon A to Z"—currently available at

idp.amazon.work—where Amazon maintains employee work schedules, time records, and pay records.

24.     Amazon set the work schedules for Plaintiff Vincenzetti and those similarly situated, including strict requirements for clocking in and out on time and for avoiding overtime. These requirements included policies that punished employees for clocking in early or clocking out late.

### III.    Plaintiff Grumet's Employment by Amazon

25.     Plaintiff Grumet worked for Amazon at the Den 2 warehouse and the Den 5 warehouse in or about October August 2019 to in or about August 2021.

26.     Plaintiff Grumet worked a schedule that was generally similar to the schedule worked by Plaintiff Vincenzetti.

27.     At all times, Plaintiff Grumet was a non-exempt hourly employee.

28.     Plaintiff Grumet's job consisted principally of moving boxes, stacking packages, and loading boxes.

29.     Amazon had the power to, and in fact did, hire and fire Plaintiff Grumet and those similarly situated.

30.     Amazon set the rate of pay for Plaintiff Grumet and those similarly situated.

31.     Amazon maintained employment records for Plaintiff Grumet and those similarly situated, including providing a platform called "Amazon A to Z"—currently available at idp.amazon.work—where Amazon maintains employee work schedules, time records, and pay records.

32.     Amazon set the work schedules for Plaintiff Grumet and those similarly situated, including strict requirements for clocking in and out on time and for avoiding overtime. These requirements included policies that punished employees for clocking in early or clocking out late.

**IV.     Amazon's Illegal Off the Clock Pay Policies**

33.     Under Colorado law, "'time worked' means time during which an employee is performing labor or services for the benefit of an employer, including all time s/he is suffered or permitted to work, whether or not required to do so." *See* 7 C.C.R. § 1103-1(1.9).

34.     This includes "requiring or permitting employees to be on the employer's premises, on duty, or at a prescribed workplace (but not merely permitting an employee completely relieved from duty to arrive or remain on-premises) — including but not limited to, if such tasks take over one minute, putting on or removing required work clothes or gear (but not a uniform worn outside work as well), receiving or sharing work-related information, **security or safety screening**, remaining at the place of employment awaiting a decision on job assignment or when to begin work, performing clean-up or other duties "off the clock," clocking or checking in or out, or waiting for any of the preceding — shall be considered time worked that must be compensated." *See* 7 C.C.R. § 1103-1(1.9.1) (emphasis added).

**A. Illegal Off the Clock Policy Prior to the Covid Pandemic**

35.     Prior to the COVID pandemic, *i.e.*, prior to in or about March 2020, Amazon had an illegal policy of forcing warehouse workers to work off the clock before and after their shifts with no compensation.

36.     Each day, Plaintiffs were forced to work before clocking in and without compensation.

37.     For example, Plaintiff Vincenzetti was required to get her badge and meet with a Shift Assistant prior to clocking in at the start of her shift to receive her job duties for the day.

38.     This was the same for workers at Amazon warehouses across Colorado.

39.     Additionally, workers would also be subjected to uncompensated security screenings.

40.     Indeed, Amazon required its employees in Colorado to undergo mandatory security screenings without pay prior to clocking in each day at the start of their shifts, after they clock out following their meal breaks and after they clock out at the end of their shifts.  Given the nature of the business, Amazon's facilities are secured by locked doors and metal detectors.

41.     During the security screening, Amazon required its employees to empty their pockets, empty their bags, remove their shoes, remove their belts, remove their jackets, remove all metal objects, and submit any personal items in their possession for inspection.

42.     They then walked through a metal detector and underwent a further search if any metal objects were detected.  After clearing the metal detector, Amazon employees were allowed to gather their belongings and put on their shoes, belts, and jackets.

43.     Given that they were not clocked in during this time, the security screenings were conducted without pay.  Indeed, this security screening lasted approximately five to 25 minutes per day and was uncompensated by Amazon.  At times, the security screenings lasted up to 45 minutes depending upon the number of people being screened.

44.     However, this time should have been compensated by Amazon.  The security screenings were required by Amazon, controlled by Amazon, and undertaken on Amazon's premises primarily for the benefit of Amazon's business.

45. Specifically, during the security screenings, Amazon employees were subject to the control of Amazon.  Amazon employees were required to follow Amazon's instructions while awaiting and during the security screening.  The security screenings were required by Amazon and its employees were required to comply under threat of discipline, including possible termination.

46. Additionally, Amazon employees were confined to the premises of Amazon when they waited for and during the screening.

47. Moreover, Amazon compelled its employees to perform specific tasks during the examination.  They were required to empty their pockets, submit their bags for a search, and walk through a metal detector.

48. If anything was detected, employees were required to undergo a second screening whereby a wand was used to scan parts of the body.

49. In other words, Amazon directed, commanded, and restrained its employees during the security screening; prevented them from using that time effectively for their own purposes; and they remained subject to Amazon's control during the examination.

50. Under Colorado law, the time spent undergoing the security screening is compensable time that should have been paid by Amazon.

51. Amazon's illegal policies as described in this Complaint occurred at Amazon warehouses across Colorado, including its fulfillment and distribution centers.  Amazon non-exempt employees were required to be on location and on duty, but off the clock for at least several minutes each day.

52.     Amazon ensured Plaintiffs and those similarly situated complied with this off the clock work policy by implementing policies that would punish employees for clocking in early or out late. If an employee clocked in early or out late too often, it would result in eventual termination.

53.     This off the clock work left Plaintiffs and those similarly situated unpaid for hourly contract wages and minimum wages.

54.     In addition, because many employees were clocked in for 40 hours a week or just shy of 12 hours in a day, this off the clock work often resulted in unpaid overtime, including for Plaintiffs.

### B. Illegal Off the Clock Policy During the Covid Pandemic

55.     During the COVID pandemic, *i.e.*, from in or about March 2020 until now, Amazon maintained the illegal off the clock policy described above, but the off the clock duties required of Amazon's employees increased dramatically.

56.     In addition to the uncompensated work described above, Amazon implemented a company-wide policy of requiring health screenings before its employees could clock in at all warehouses, including Colorado Warehouses.

57.     These health screenings led to long lines outside and inside the facilities.

58.     Plaintiffs and those similarly situated would have to arrive early, wait in a line outside the facility, enter the facility and continue to wait in line, stand six feet apart from their co-workers, answer health screening questions and have their temperature checked.

59.     Only after the lengthy line and COVID screening could Plaintiffs and those similarly situated proceed with any other required off the clock duties and then clock in.

60.    Sometimes the lines were shorter, in particular when there were COVID outbreaks leading to a substantial part of the workforce being quarantined.

61.    But, in general, since March 2020, the lines have been very long.

62.    These lengthy lines and the screenings themselves usually led to 20-60 minutes of time that Plaintiffs and those similarly situated were required to work but were not compensated.

63.    This was true at every Amazon warehouse in Colorado.

64.    This COVID-19 screening should have been paid by Amazon because it constitutes compensable time worked under Colorado law.  Amazon required its employees to follow Amazon's instructions while awaiting and during the COVID-19 screening.  Amazon required every employee to complete the COVID-19 screening and it was not optional.  Indeed, the COVID-19 screening was required by Amazon and its employees must comply under threat of discipline, including possible termination.

65.    Additionally, Amazon employees were confined to the premises of Amazon when they waited for and during the examination.

66.    Moreover, Amazon compels its employees to perform specific tasks during the examination.  They must answer questions, submit to have their temperature taken, and wear masks.

67.    In other words, Amazon directs, commands, and restrains its employees during the COVID-19 examination; prevents them from using that time effectively for their own purposes; and they remain subject to Amazon's control during the examination.

68.    Under Colorado law, the time spent undergoing the COVID-19 screening is compensable time that should have been paid by Amazon.

69.     As it did prior to the COVID pandemic, Amazon ensured Plaintiffs and those similarly

situated complied with its off the clock work policy by using policies that would punish

employees for clocking in early or out late. If an employee clocked in early or out late too often,

it would result in eventual termination.

70.     This off the clock work left Plaintiffs and those similarly situated unpaid for hourly

contract wages and minimum wage.

71.     In addition, because many employees were clocked in for 40 hours a week or just shy of

12 hours in a day, this off the clock work often resulted in unpaid overtime, including for

Plaintiffs.

## RULE 23 CLASS ALLEGATIONS

72.     Plaintiffs allege all claims as a Fed R. Civ P. 23 class action on their behalf and on behalf

of the class they seek to represent.

73.     Pending any modifications necessitated by discovery, Plaintiffs preliminarily define the

Rule 23 Class as follows:

> **ALL CURRENT AND FORMER HOURLY EMPLOYEES WHO WORKED
> AT DEFENDANT'S WAREHOUSES IN COLORADO DURING THE SIX
> YEAR PERIOD PRIOR TO THE FILING OF THE COMPLAINT TO THE
> PRESENT.**

74.     The class is so numerous that joinder of all potential class members is impracticable.

Plaintiffs do not know the exact size of the class since that information is within the control of

Amazon. However, Plaintiffs estimate that, based on the size of Amazon's operations, the class

is composed of well over 10,000 persons. The exact size of the class will be easily ascertainable

from Amazon's employment records.

75.     There are questions of law or fact common to the class that predominate over any individual issues that might exist. Common questions of law and fact include: whether Plaintiffs and those similarly situated are entitled to compensation for time spent on the job site and on duty prior to clocking in or after clocking out; whether time spent in the COVID-19 screening is compensable under Colorado law, whether the time spent in the security screenings is compensable under Colorado law, the amount of time spent on these off the clock duties, the compensation due for these off the clock duties, whether these off the clock duties required Plaintiffs and those similarly situated to work more than 40 hours in a week or 12-hours in a day, whether Amazon failed to keep accurate records of time worked as required by Colorado law, and whether Amazon's actions were willful.

76.     The class claims asserted by Plaintiffs are typical of the claims of all the potential class members because they all experienced the same or similar working conditions and pay practices. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because numerous identical lawsuits alleging similar or identical causes of action would not serve the interests of judicial economy. This is especially true in the case of low-wage, hourly workers like the class members here, who are unsophisticated, are unlikely to seek legal representation, cannot realistically navigate the legal system *pro se*, and whose small claims make it difficult to retain legal representation if they do seek it.

77.     Plaintiffs will fairly and adequately protect and represent the interests of the class. Plaintiffs and the proposed class were all Amazon warehouse employees and were all victims of the same violations of law as the other class members, including numerous violations of state wage and hour laws.

78.     Plaintiffs are represented by counsel experienced in litigation on behalf of low-wage workers and in wage and hour class actions.

79.     The prosecution of separate actions by the individual potential class members would create a risk of inconsistent or varying adjudications with respect to individual potential class members that would establish incompatible standards of conduct for Amazon.

80.     Each class member's claim is relatively small. Thus, the interest of potential class members in individually controlling the prosecution or defense of separate actions is slight. In addition, public policy supports the broad remedial purposes of class actions in general and that the pertinent state laws are appropriate vehicles to vindicate the rights of those employees with small claims as part of the larger class.

81.     Plaintiffs are unaware of any members of the putative class who are interested in presenting their claims in a separate action.

82.     Plaintiffs are unaware of any pending litigation commenced by members of the class concerning the instant controversy.

83.     It is desirable to concentrate this litigation in this forum because all parties are domiciled in this jurisdiction or are registered to do business in this jurisdiction. Moreover, the acts or omissions giving rise to the claims in this case largely, or completely, occurred in this jurisdiction.

84.     This class action will not be difficult to manage due to the uniformity of claims among the class members and the susceptibility of wage claims to both class litigation and the use of representative testimony and representative documentary evidence.

85.     The contours of the class will be easily defined by reference to the payroll documents Amazon was legally required to create and maintain.

### <u>COUNT I</u>: VIOLATION OF THE COLORADO WAGE CLAIM ACT, C.R.S. §§ 8-4-101, et seq.

86.     Plaintiffs bring this claim on behalf of themselves and on behalf of all those similarly situated pursuant to Fed. R. Civ. P. 23.

87.     At all material times, Amazon was an "employer" within the meaning of the Colorado Wage Claim Act, C.R.S. §§ 8-4-101, *et seq.*

88.     At all material times, Amazon employed "employees," including Plaintiffs and the Rule 23 Class, within the meaning of the Colorado Wage Claim Act, C.R.S. §§ 8-4-101, *et seq.*

89.     As a result of the foregoing conduct, as alleged, Amazon failed to pay wages due thereby violating, and continuing to violate, the Wage Claim Act. These wages include minimum wage, hourly contract wages, and overtime wages.

90.     These violations were committed knowingly, willfully and with reckless disregard of applicable law, as Amazon knew it was requiring its employees to perform off the clock job duties and knew it was paying them nothing for these off the clock job duties.

91.     As a result, Plaintiffs have been damaged in an amount to be determined at trial. Plaintiffs hereby demand payment on their behalf and on behalf of all members of the Rule 23 Class in an amount equal to all earned but unpaid straight time and overtime compensation. This demand for payment is continuing and is made on behalf of any current employees of Amazon whose employment terminates at any time in the future. Such payment should be made in care of undersigned counsel at the listed address.

92.     Plaintiffs and the Rule 23 Class are therefore entitled to unpaid wages, statutory penalties, attorney's fees, costs, and applicable statutory interest.

<u>**COUNT II**</u>**: VIOLATION OF THE COLORADO MINIMUM WAGE ACT, C.R.S. §§ 8-6-101,** *et seq.*

93.     Plaintiffs bring this claim on their behalf and on behalf of all those similarly situated pursuant to Fed. R. Civ. P. 23.

94.     At all material times, Amazon has been an "employer" within the meaning of the Colorado Minimum Wage Act.

95.     At all material times, Amazon employed, and continues to employ, "employees," including Plaintiffs and the members of the Rule 23 Class, within the meaning of the Minimum Wage Act.

96.     Plaintiffs and the Rule 23 Class were employees of Amazon within the meaning of the Minimum Wage Act.

97.     As a result of the foregoing conduct, as alleged, Amazon has violated, and continues to violate, the Minimum Wage Act. These violations were committed knowingly, willfully and with reckless disregard of applicable law.

98.     Specifically, Amazon knew it was requiring its employees to perform off the clock job duties and knew it was paying them nothing for these off the clock job duties.

99.     As a result, Plaintiffs and the Rule 23 Class have been damaged in an amount to be determined at trial and are entitled to unpaid wages, attorney's fees, costs, and applicable statutory interest.

**COUNT III: CIVIL THEFT,**
**C.R.S. § 18-4-405**

100.    Plaintiffs brings this claim on their behalf and on behalf of all those similarly situated pursuant to Fed. R. Civ. P. 23.

101.    At all material times, Amazon has been an "employer" within the meaning of the Colorado Minimum Wage Act.

102.    At all material times, Amazon employed, and continues to employ, "employees," including Plaintiffs and Rule 23 Class, within the meaning of the Minimum Wage Act.

103.    Plaintiffs and Rule 23 Class were employees of Amazon within the meaning of the Minimum Wage Act.

104.    Amazon's intentional failure to pay minimum wage under the Minimum Wage Act constitutes theft pursuant to C.R.S. § 18-4-401. *See* C.R.S. § 8-6-116.

105.    Specifically, Amazon knew it was requiring its employees to perform off the clock job duties and knew it was paying them nothing for these off the clock job duties.

106.    As a result, Amazon's failure to pay minimum wage constitutes civil theft pursuant to C.R.S. § 18-4-405.

107.    Plaintiffs and Rule 23 Class are entitled to treble damages, attorney's fees, costs, and statutory interest.

**DEMAND FOR JURY TRIAL**

108.    Plaintiffs demand a trial by jury for all issues so triable.

**PRAYER FOR RELIEF**

109.    Plaintiffs respectfully request an Order and Judgment from this Court:

a.      Certifying the Rule 23 class, naming Plaintiffs as representatives of the class

Plaintiffs seek to represent, and naming Plaintiffs' counsel class counsel;

b.      granting judgment in favor of Plaintiffs and the Rule 23 Class against

Amazon;

c.      awarding Plaintiffs and the Rule 23 class their actual damages and any

applicable statutory damages;

d.      awarding Plaintiffs and those similarly situated their costs;

e.      awarding Plaintiffs and those similarly situated their attorney's fees;

f.      awarding Plaintiffs and those similarly situated prejudgment and post-

judgment interest, when allowable by law; and

g.      granting such other relief as this Court deems just and proper.

Respectfully Submitted,

*/s/Alexander Hood*
Alexander N. Hood, CO Atty Reg. # 42775
David H. Seligman, CO Atty Reg. # 49394
Brianne M. Power, CO Atty Reg. # 53730
Towards Justice
PO Box 371680, PMB 44465
Denver, CO 80237-5680
720-441-2236
alex@towardsjustice.org
david@towardsjustice.org
brianne@towardsjustice.org

*/s/ Don J. Foty*
Don J. Foty
Hodges & Foty, LLP
Texas Bar No. 24050022
4409 Montrose Blvd., Suite 200
Houston, Texas 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116

16

dfoty@hftrialfirm.com

Brian D. Gonzales, CO Atty. Reg. # 29775
THE LAW OFFICES OF BRIAN D. GONZALES,
PLLC
2580 East Harmony Road, Suite 201
Fort Collins, Colorado 80528
(970) 214-0562
BGonzales@ColoradoWageLaw.com

Attorneys for Plaintiffs