**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Case No. 1:21-cv-02681-CNS-NRN**

**JENNIFER VINCENZETTI and ALICIA GRUMET,**
**on behalf of themselves and those similarly situated,**

     **Plaintiff,**

**v.**

**AMAZON.COM SERVICES LLC,**

     **Defendant.**

<u>**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**</u>

## TABLE OF CONTENTS

I.    BACKGROUND ........................................................................................... 1

A.    Amazon violated Colorado law by failing to pay for the time spent by its hourly employees completing COVID screenings and secondary security screenings. ........ 1

B.    Amazon implemented a company-wide policy requiring all hourly employees at each of its facilities to complete COVID screenings off-the-clock. ............................. 2

C.    The COVID screening process was the same for all hourly paid employes in Colorado. ................................................................................................................ 4

D.    Amazon implemented a policy requiring all hourly employees at each of its fulfillment centers to complete an exit screening off-the-clock. ................................... 6

E.   The exit screening process was the same for all hourly paid employes who worked at Amazon fulfillment centers in Colorado. ............................................................... 7

F.   The record contains significant common evidence demonstrating that class certification is appropriate. ........................................................................................ 9

1.  Amazon has employed over 13,000 hourly paid workers in Colorado during the class period. .......................................................................................................... 9

2.  Amazon's COVID screening process was the same for all Class Members. .. 10

3.  Amazon's exit screening process is the same for all Class Members. ............ 10

4.  Amazon has produced uniform time clock data and identification badge data for the Class Members. ............................................................................................... 10

G.    There are no individualized issues in this case. ............................................. 11

H.    Cases involving unpaid COVID screenings and security screenings are inherently appropriate for class certification. .......................................................... 13

II.    ARGUMENTS AND AUTHORITIES .................................................................... 14

A.    The numerosity requirement is satisfied. ....................................................... 15

B.    The typicality requirement is satisfied. ........................................................... 15

C.    The adequacy requirement is satisfied. .......................................................... 16

D.    The commonality requirement is satisfied. ..................................................... 18

1. Commonality is satisfied because Plaintiffs challenge Amazon's policies that affected all Class Members. .................................................................................... 19

2.  Commonality is also satisfied because Plaintiffs' claims can be resolved through common evidence.................................................................................. 20

E.  The predominance requirement is satisfied. ..................................................... 21

1.  There are four principles that govern the predominance analysis. .................. 21

2.  The predominance requirement is satisfied because Plaintiffs challenge Amazon's uniform screening policies. .................................................................. 23

F.  The superiority requirement is satisfied. ........................................................... 25

# TABLE OF AUTHORITIES

Page(s)

Cases

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591 (1997) ..................................................................................... 25

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
568 U.S. 455 (2013) ................................................................................ 18, 22

*Brayman v. Keypoint Gov't Sols., Inc.*,
595 F. Supp. 3d 983 (D. Colo. 2022) ........................................................... 15

*Bustillos v. Bd. of Cty. Comm'rs of Hidalgo Cty.*,
310 F.R.D. 631 (D.N.M. 2015) ..................................................................... 23

*Califano v. Yamasaki*,
442 U.S. 682 (1979) ................................................................................ 14, 24

*CGC Holding Co., LLC v. Broad & Cassel*,
773 F.3d 1076 (10th Cir. 2014) .................................................................... 18

*Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*,
765 F.3d 1205 (10th Cir. 2014) .................................................................... 15

*Conejo v. Malwitz*,
No. Civ. A. 1:24-CV-232-CNS-NRN, 2025 U.S. Dist. LEXIS 151597 (D. Col. May 12,
2025) ............................................................................................................ 23

*D.G. ex rel. Stricklin v. Devaughn*,
594 F.3d 1188 (10th Cir. 2010) .................................................................... 18

*Felps v. Mewbourne Oil Co., Inc.*,
336 F.R.D. 664 (D.N.M. 2020) ..................................................................... 23

*Gamboa v. Kiss Nutraceuticals*,
777 F. Supp. 3d (D. Colo. 2025) .................................................................. 23

*Gen. Tel. Co. of the Southwest v. Falcon*,
457 U.S. 147 (1982) ..................................................................................... 24

*Harrel's LLC, v. Chaparral Energy, LLC (Naylor Farms, Inc.)*,
923 F.3d 779 (10th Cir. 2019) ...................................................................... 21

*In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig., PNC Bank NA*,
795 F.3d 380 (3rd Cir. 2015) ........................................................................ 20

*In re Suboxone Antitrust Litig.*,
  967 F.3d 264 (3rd Cir. 2020)................................................................22

*In re Urethane Antitrust Litig.*,
  768 F.3d 1245 (10th Cir. 2014)...........................................................24

*J.B. v. Valdez*,
  186 F.3d 1280 (10th Cir. 1999)...........................................................19

*Jet Courier Serv., Inc. v. Mulei*,
  771 P.2d 486 (Colo. 1989)..................................................................14

*Menocal v. GEO Grp., Inc.*,
  882 F.3d 905 (10th Cir. 2018)....................................................... 18, 24

*Neiberger v. Hawkins*,
  208 F.R.D. 301 (D. Colo. 2002) ..........................................................17

*Payne v. Tri-State CareFlight, LLC*,
  332 F.R.D. 611 (D.N.M. 2019) ............................................................19

*Pliego v. Los Arcos Mexican Restaurants, Inc.*,
  313 F.R.D. 117 (D. Colo. 2016) .................................................... 17, 23

*Queen Uno Ltd. P'ship v. Coeur D'Alene Mines Corp.*,
  183 F.R.D. 687 (D. Colo. 1998) ..........................................................16

*Rodriguez v. National City Bank*,
  726 F.3d 372 (3rd Cir. 2013)...............................................................18

*Sherman v. Trinity Teen Sols., Inc.*,
  84 F.4th 1182 (10th Cir. 2023) ...........................................................24

*Trevizo v. Adams*,
  455 F.3d 1155 (10th Cir. 2006) ..........................................................15

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016).............................................................. 20, 21, 22

Plaintiffs Vincenzetti and Grumet, former non-exempt hourly paid employees of Amazon, bring this lawsuit seeking compensation for the time spent off-the-clock as a result of Amazon's company-wide policy requiring each of its employees to pass a COVID screening in order to work for the day and policy requiring hourly employees at Amazon fulfillment centers complete secondary security screenings without pay. Amazon's failure to pay Plaintiffs and the Class Members for this time violates Colorado law. Through this Motion, Plaintiffs ask the Court to certify this lawsuit as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3). Plaintiffs seek to certify the following Classes:

> <u>COVID Class</u>: All current and former hourly paid employees of Amazon who underwent a COVID screening during at least one week in Colardo in the three-year period before October 1, 2021 to the present.

> <u>Exit Screening Class</u>: All current and former hourly paid employees of Amazon who underwent a secondary screening during at least one week in Colorado in the three-year period before October 1, 2021 to the present.

As explained in this brief and as reflected in the accompanying exhibits, this lawsuit – which challenges the legality of standardized and company-wide policies that Amazon has imposed on all Class Members – is especially well suited for class-wide resolution. Indeed, because the success or failure of Plaintiffs' claims turns on a body of common evidence applicable to all Class Members. Accordingly, the Court should grant Plaintiffs' Motion for Class Certification.

## I.    <u>BACKGROUND</u>

### A. Amazon violated Colorado law by failing to pay for the time spent by its hourly employees completing COVID screenings and secondary security screenings.

Under Colorado law, "'time worked' means time during which an employee is performing labor or services for the benefit of an employer, including all time s/he is

1

suffered or permitted to work, whether or not required to do so." *See* 7 C.C.R. § 1103-1(1.9). This includes "requiring or permitting employees to be on the employer's premises, on duty, or at a prescribed workplace [] — including but not limited to [] **security or safety screening**, [] or waiting for any of the preceding — shall be considered time worked that **must be compensated**." *See* 7 C.C.R. § 1103-1(1.9.1) (emphasis added).  The instant lawsuit invokes the rule that "time worked" includes time spent in a "security or safety screening." Relying on this rule, Plaintiffs challenge Amazon's *company-wide* policy of failing to pay its hourly employees for the time spent completing COVID screenings. Plaintiffs also challenge Amazon's policy of failing to pay its hourly employees for the time spent completing secondary security screenings. Amazon has violated Colorado law by not paying its hourly employees for this time*.*

**B. Amazon implemented a company-wide policy requiring all hourly employees at each of its facilities to complete COVID screenings off-the-clock.**

Following the outbreak of the COVID pandemic, Amazon implemented a company-wide policy requiring all hourly paid employees to pass a COVID health screening in order to work for the day.  Amazon's COVID screening policy states: "Screenings should be done on all individuals attempting to enter an Amazon Operations Site, including Amazon employees []. It will be conduced upon entry to the building."[1]  This COVID screening was conducted at all Amazon sites from approximately March 2020 to July 2021.[2]

---

[1] Ex. "20" at AMAZON 0776 (emphasis added).
[2] Ex. "8" – Deposition of Conaway at 150:5-14; Ex. "17" – Amazon Answers to Interrogatories at 13.

2

Amazon operates three types of sites in Colorado: (1) fulfillment centers, (2) sortation centers, and (3) delivery stations.[3]  Amazon's witness, Christoper Howard, explained that a fulfillment center is a large warehouse where items are stored waiting to be packaged and ultimately, delivered to customers.[4]  A sortation center is a temporary holding facility where packages are sorted to be delivered.[5]  A delivery station is the site where packages are stored waiting to be picked up by Amazon delivery drivers to be delivered to customers.[6]  It is undisputed that at these worksites, Amazon employs hourly workers whose job it is to handle of packages that will eventually be sent to customers.

Beginning in March 2020, all hourly employees of Amazon were required to complete a COVID screening in order to work for the day.

> Q.  Okay.  So that would mean that all employees of
> Amazon were required to go through the COVID screening?
> **A.  Correct.**

(Ex. "8" at 48:23-25) (emphasis added).[7]

> Q.  Okay.  All right.  Were any employees at either
> fulfillment centers or distribution centers exempt from the
> COVID screening?
> **A.  No.**

(*Id*. at 68:11-14) (emphasis added).

The COVID screening was not optional.[8]  It is undisputed that all Amazon employees were required to complete a COVID screening every day.[9]  If an employee

---

[3] Ex. "7" – Deposition of Gilbert-Differ at 37:9 to 38:9; 40:7-13; Ex. "10" – Deposition of Howard at 23:2-13.

[4] Ex. "10" at 23:2-8.

[5] *Id*. at 23:9-12.

[6] Ex. "7" at 37:9 to 38:9; 40:7-13; 41:19-25.

[7] *See also* Ex. "8" at 45:3-10.

[8] *Id*. at 47:23 to 48:5; 68:15-19; 69:16-23; 133:24 to 134:2.

[9] *Id*. at 68:15-19.

3

refused to complete the COVID screening, that employee was sent home without pay.[10]

Indeed, the very first thing Amazon employees were required to do after entering the

Amazon facility was complete the COVID screening.[11] Unfortunately, Amazon's policy

was not to pay for this time.  Amazon instituted a written policy that states: "**After** Thermal

Screening process, associates clock in."[12]  That means Amazon's written policy was for

employees to complete the COVID screening off-the-clock.  Amazon deprived its hourly

employees of pay for all hours that they worked.  Amazon's Corporate Representative

testified as follows:

> Q.  To your knowledge, were Amazon managers ever
> instructed to add time to employees' pay for the time worked
> off the clock as a result of the COVID screening?
> THE WITNESS:  **No.**

(Ex. "8" at 130:23 to 131:12) (emphasis added).

Class certification is appropriate because this case involves a company policy

requiring all hourly employes to perform the same work each shift without pay.  Here,

Amazon's policy requiring every hourly paid employee to complete a COVID screening

every day affected all COVID Class Members in precisely the same manner. Accordingly,

class certification should be granted.

### C.  The COVID screening process was the same for all hourly paid employes in Colorado.

It is undisputed that the policies and procedures for conducting the COVID

screening were the same for all Amazon employees at every site.[13]  The screening was

---

[10] *Id*. at 68:20 to 69:3.

[11] *Id*. at 187:23 to 188:4.

[12] Ex. "19" at AMAZON 05578 (emphasis added).

[13] Ex. "8" at 51:17-22; 90:4-13; 144:8-15.

conducted on the premises of Amazon immediately after an employee entered the Amazon site.[14]  As part of the COVID screening, Amazon employees were required to line up and stand six feet apart.[15]  There were visual markers on the ground indicating where employees were required to stand.[16]  Amazon's policy required a manager or member of human resources to monitor the employees while they waited in line to ensure that they were maintaining the proper social distance.[17]  Each Amazon employee was then called one by one to be screened

Initially, each Amazon employee had to stand at a designated location while another employee manually took their temperature.[18]  This involved stepping into a green taped area and turning sideways next to a plexiglass barrier.[19]  Later, thermal cameras were installed.[20]  The new process involved an employee stepping into a designated location so that the camera could take a temperature reading.[21]

Each Amazon employee was also required to read a series of questions to confirm that they did not have any symptoms of COVID.[22] Then each Amazon employee was required to answer a series of questions about whether they had any symptoms of COVID.[23] At the end of the process, each Amazon employee was required to swipe their Amazon issued identification badge to confirm whether they did or did not have any

---

[14] *Id*. at 71:24 to 72:2; 187:23 to 188:4; Ex. "20" at AMAZON 0776.

[15] *Id*. at 76:17 to 77:8; 77:23-25.

[16] *Id*.

[17] *Id*. at 80:5-11; *see also* Ex. "20" at p. AMAZ 0777.

[18] Ex. "8" at 91:1 to 93:5; 131:22 to 132:2; 132:14-20.

[19] *Id*.

[20] *Id*. at 127:15 to 128:10.

[21] *Id*.

[22] *Id*. at 145:14 to 146:14.

[23] *Id*. at 147:14 to 148:12.

symptoms of COVID.[24]  As noted earlier, passing the COVID screening was a requirement to work for the day.[25] And more importantly, Amazon did not pay for the time spent by its employees in the COVID screenings.[26]

**D. Amazon implemented a policy requiring all hourly employees at each of its fulfillment centers to complete an exit screening off-the-clock.**

Amazon also implemented an exit screening policy (also known as a "security screening") at each of its fulfillment centers in Colorado.[27]  The Amazon fulfillment centers in Colorado are known as DEN 2, DEN 3, DEN 4, and DEN 8.[28] Amazon still conducts the exit screenings/security screenings to this day.[29]  The purpose of the exit screening/security screening is for Amazon to catch any theft, prevent the loss of any of its products or data, and to search for weapons.[30]

All Amazon hourly employees that work at fulfillment centers in Colorado are required to complete an exit screening before leaving the facility.[31] Amazon's Corporate Representative testified as follows:

> Every employee at a fulfillment
> center in Colorado before they leave the facility
> has to go through an exit screening; correct?
> **A.    Yes.**

(Ex. "7" at 66:17-20) (emphasis added).

---

[24] *Id*. at 117:13-20; 125:1-11.

[25] *Id*. at 47:23 to 48:5; 68:15-19; 69:16-23; 133:24 to 134:2.

[26] Ex. "6" – Declaration of Dwight Steward; *see also* Ex. "8" at 130:23 to 131:12; Ex. "19."

[27] Ex. "7" at 36:12-15; 36:20-23; 42:1-9.

[28] *Id*. at 68:3-17.

[29] *Id*. at 68:18-20.

[30] *Id*. at 42:20 to 43:8.

[31] *Id*. at 66:17-20.

In fact, the exit screening is not optional.[32]  Amazon employees are not permitted to bypass this screening and if they attempt to do so, they can be disciplined.[33] The exit screening/security screening occurs after Amazon employees complete their shifts[34] and after they clock-out.[35]  Like the COVID screening, Amazon's policy is not to pay its hourly employees for the time spent completing the exit/security screening.[36]

Class certification should be granted as well because this claim involves Amazon's policy of requiring all hourly employees at fulfillment centers to perform the same work (exit/security screening) each shift without pay.  Each of the Exit Screening Class Members was affected in exactly the same way and their claims are based on the same set of facts.

### E. The exit screening process was the same for all hourly paid employes who worked at Amazon fulfillment centers in Colorado.

All Amazon employees who work at fulfillment centers are required to complete an exit/security screening.[37]  And it is undisputed that the policies and procedures for conducting the exit/security screening are the same for all Amazon employees at every fulfillment center.[38]  Amazon's Corporate Representative testified as follows:

> Q.     And is the process for conducting the exit screenings the same at DEN 2, DEN 3, DEN 4, and DEN 8?
> **A.     Yes, it should be, yes.**

---

[32] *Id*. at 82:19 to 83:24; 104:4-12.

[33] *Id*. at 77:5-9; 304:8 to 305:25.

[34] *Id*. at 47:16-20; 58:9-13.

[35] *Id*. at 52:22 to 53:6; 64:6-16; 65:13-17.

[36] *Id*. at 51:9-13; 58:14-19; 64:6-12; 65:25 to 66:13.

[37] *Id*. at 66:17-20.

[38] *Id*. at 75:24 to 76:2; 80:6-9; 257:9-24.

(*Id*. at 75:24 to 76:2) (emphasis added).

This exit screening/security screening involves Amazon employees walking to a screening station, known as the "primary screening" to undergo the exit/security screening.[39] At the primary screening, there are two lanes: one lane for employees with bags and a second lane for employees without bags.[40]  Both lanes have a metal detector for employees to walk through.[41]  The lane for employees with bags also has an x-ray machine for employees to place their bags.[42]

In addition to the primary screening, there is a secondary screening.[43] If the alarm goes off when an employee walks through a metal detector at the primary screening station, the employee is directed to the secondary screening station.[44]  Additionally, Amazon employees are randomly selected each shift to complete a secondary screening after completing the primary screening.[45]

The secondary screening is a more thorough screening.  Amazon employees are required to remove all metal items, submit any items for a visual inspection by a security officer, and then walk through a different metal detector.[46]  There is also an eight point wand inspection.[47]  After completing the secondary screening, Amazon employees are required to swipe their Amazon issued identification badge on a electronic device that

---

[39] Ex. "26 – Amazon Exit Screening Diagram; Ex. "27" – Amazon Exit Screening Policy at AMAZON 1112.

[40] Ex. "7" at 105:11-23.

[41] *Id*.

[42] *Id*.

[43] Ex. "27" at AMAZON 1113.

[44] Ex. "7" at 105:24 to 106:4.

[45] *Id*. at 232:2-10; *see also* Ex. "28" – Amazon Exit Screening Description.

[46] Ex. "7" at 121:16-25; 124:23 to 126:5; 259:19 to 260:7.

[47] *Id*. at 166:18 to 167:18.

records the time when the secondary screening was completed.[48]  Therefore, Amazon maintains data showing the date and time when each of its employees complete the secondary screening.[49]  That means that Amazon has data showing the precise date and time when each of its employees clocked-out and when each of its employees completed the secondary screening afterward.[50] This case is ideal for class certification because liability and damages can be easily resolved using the data in Amazon's possession.

**F. The record contains significant common evidence demonstrating that class certification is appropriate.**

It is undisputed that all hourly paid employees of Amazon were paid under the same pay policy,[51] were required to complete COVID screenings each shift,[52] and the policies for completing the COVID screenings were the same across all Amazon locations.[53] Similarly, all hourly paid employees at Amazon fulfillment centers are required to complete an exit screening/security screening each shift[54] and the policies for completing the exit/security screening are the same at all Amazon locations.[55] Further, the following additional facts render this case well suited for a class-wide resolution.

**1. <u>Amazon has employed over 13,000 hourly paid workers in Colorado during the class period.</u>**

Amazon operates numerous sites in Colorado. At each of these locations, Amazon employs hourly workers. During the class period, there were over 13,000 hourly paid

---

[48] *Id*. at 123:11-14; 129:2-6.

[49] *Id*. at 54:11-16; 54:25 to 55:8; 122:11-17; 129:18-23.

[50] *Id*. at 135:4-11; 137:11 to 138:3.

[51] Ex. "31" – Amazon Hours Worked Policy.

[52] Ex. "8" at 48:23-25.

[53] *Id*. at 51:17-22; 90:4-13; 144:8-15.

[54] Ex. "7" at 66:17-20.

[55] *Id*. at 75:24 to 76:2; 80:6-9; 257:9-24.

9

workers in Colorado.[56]   Again, these workers were subject to the same policies and procedures and experienced the same violation of Colorado's wage and hour laws.

### 2. Amazon's COVID screening process was the same for all Class Members.

As noted earlier, all COVID Class Members were required to complete a COVID screening each day. The COVID screening was not optional.  All Class Members were required to pass the screening in order to work for the day. The policies and procedures for conducting the COVID screening were the same for each Class Member at every site.

### 3. Amazon's exit screening process is the same for all Class Members.

Further, all Exit Screening Class Members are required to complete a secondary screening. The secondary screening is not optional and if an Amazon employee tries to bypass the secondary screening, they can be disciplined.   Further, the policies and procedures for conducting the secondary screening are the same for all Amazon hourly paid employees at fulfillment centers.

### 4. Amazon has produced uniform time clock data and identification badge data for the Class Members.

Amazon has standardized payroll and time keeping data.  Indeed, Amazon has data that identifies when each Class Member clocked-in or out and which device was used to do so.[57]  Amazon employees are also issued a unique ID badge.[58]  This ID badge is what is used by Amazon employees to enter Amazon sites.[59]  Amazon maintains data showing when each employee's badge was scanned at a particular location, including

---

[56] Ex. "6" – Declaration of Dr. Steward, Report dated June 10, 2024 at page 12.

[57] Ex. "32" – Time Clock Data.

[58] Ex. "10" at 39:5 to 40:16; Ex. "29" –  Amazon Badge Access Data for Plaintiff Grumet.

[59] Ex. "8" at 86:10 to 87:1.

data as to when each employee entered an Amazon site.[60]  Amazon also has data identifying the precise date and time when each hourly employee completed a COVID screening.[61]  Moreover, Amazon has data showing when each Amazon employee completed as secondary security screening.[62]

Using this data in Amazon possession, along with Amazon's uniform policies and procedures, liability and damages can be determined on a class basis.  This evidence can be used to identify exactly when work was performed, for how long the work was performed, and whether Amazon paid for that work.  Indeed, Dr. Steward – Plaintiffs' expert statistician – has reviewed the data produced by Amazon and has identified for each Class Member when they completed a screening without pay, how long they performed that work, and how much is owed to each Class Member.[63] In light of this common evidence, class certification should be granted.

**G. There are no individualized issues in this case.**

Amazon's COVID screening process was designed so that as soon as an Amazon employee entered the Amazon site, that employee had to immediately begin the COVID screening.  Similarly, Amazon's exit screening policy was designed so that Amazon employees could not leave the facility at the end of their shifts without completing the exit screening.  Despite the fact that this work was required and completed on Amazon's premises, Amazon has made no effort to compensate any of the Class Members for this work.  The evidence attached to this Motion establishes the following facts:

---

[60] *Id.*; *see also* Ex. "29."
[61] Ex. "8" at 117:13-20; 125:1-11; Ex. "21."
[62] Ex. "7" at 122:4-17; 123:11-14.
[63] Ex. "6" – Declaration of Dr. Steward along with his expert reports.

**COVID Screening Facts**

- All Amazon sites in Colorado conducted the COVID screenings;

- All hourly paid employees at the Amazon sites in Colorado were required to complete the COVID screenings;

- The COVID screenings occurred each day from the end of March 2020 to July 2021;

- The process for completing the COVID screenings was the same for all employees;

- Amazon has data showing when each employee entered the Amazon site;

- Amazon has data showing when each employee completed a COVID screening;

- Amazon has data showing when each employee clocked-in;

**Secondary Security Screening Facts**

- All Amazon fulfillment centers in Colorado conduct exit screenings, including the secondary security screenings;

- All hourly paid employees at the Amazon fulfillment centers in Colorado are subject to secondary security screenings;

- Amazon still requires its hourly employees to complete secondary security screenings to this day;

- The process for completing the secondary security screenings is the same for all employees;

- Amazon has data showing when each employee clocks out at the end of their shift;

- Amazon has data showing when each employee completes a secondary security screening.

Based on these facts, liability and damages can be determined for all Class Members.  The common evidence presented here enables a determination to be made as to (1) when the screenings were performed, (2) how much time was spent for the

screenings, (3) whether Amazon paid for that work, and (4) whether the time spent in the screenings is compensable under Colorado law. Accordingly, the Court should grant Plaintiffs' Motion for Class Certification.

### H. Cases involving unpaid COVID screenings and security screenings are inherently appropriate for class certification.

The issues presented in this case are not unique. In fact, federal courts routinely grant class certification under very similar facts, including against Amazon. Indeed, in *Connelly v. Amazon.com Servs., LLC*, the court granted class certification against Amazon on the claim that Amazon failed to pay its hourly paid workers for the time spent completing COVID screenings – the same issue presented before this Court. *Connelly v. Amazon.Com Servs., LLC*, Case No. 5:23-cv-02768, 2025 U.S. Dist. LEXIS 38050 (E.D. Pa. March 4, 2025). The facts in *Connelly* are practically identical to the facts in the present case. Moreover, other federal courts have granted class certification on the claim that an employer failed to pay for the time spent completing COVID screenings. *See, e.g., Villa v. Cargill Meat Solutions Corporation*, Case No. 3:22-cv-01321, 2024 U.S. Dist. LEXIS 180090 (M.D. Pa. October 2, 2024); *Arrison v. Walmart Inc.*, Case No. 2:21-cv-481, 2023 U.S. Dist. LEXIS 119213 (D. Ariz. July 10, 2023).

With respect to unpaid security screenings, in *Martinez v. Amazon.com Servs., LLC*, the court granted class certification against Amazon on the claim that Amazon requires its employees to complete security screenings without pay – the same claim at issue in the present case. *Martinez v. Amazon.com Servs. LLC*, Case No. 1:22-cv-502, 2024 U.S. Dist. LEXIS 209566 (D. Md. Nov. 18, 2024) (granting class certification against Amazon for the claim that Amazon failed to pay its hourly employees for the time spent completing exit screenings). Other federal courts have also granted class certification for

13

unpaid security screening claims. *See, e.g., Sadler v. Target Corp*., Case No. 1:23-cv-30, 2025 U.S. Dist. LEXIS 16615 (D.N.J. Jan. 29, 2025) (granting class certification for claim that plaintiff and class members were not paid for time spent completing security screenings); *Malone v. UPS*, Case No. 2:21-cv-03643, 2025 U.S. Dist. LEXIS 257208 (E.D. Pa. Dec. 12, 2025) (same); *Alfonso v. FedEx Ground Package Sys*., Case No. 3:21-cv-01644, 2024 U.S. Dist. LEXIS 40928 (D. Conn. March 8, 2024) (same).

Like these prior cases, class certification should be granted.

## II.    <u>ARGUMENTS AND AUTHORITIES</u>

Class treatment of wage claims advances the important public policy goals of Colorado's wage-and-hour laws: "The welfare of the state of Colorado demands that workers be protected from conditions of labor that have a pernicious effect on their health and morals, and it is therefore declared, in the exercise of the police and sovereign power of the state of Colorado, that inadequate wages ... exert such pernicious effect." C.R.S. § 8-6-101(1). Interpretive caselaw has stated that "it is clear that the intent of these labor laws was to protect employees from exploitation, fraud and oppression..." *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 504 (Colo. 1989). The public policy of requiring employers to pay their employees for all work they perform is a cornerstone of labor law, economic security, and common sense in Colorado. Class certification furthers these policies goals.  Indeed, "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979). As discussed herein, Plaintiffs satisfy each of the class certification requirements.

14

**A. The numerosity requirement is satisfied.**

Rule 23(a) requires that the class be "so numerous that joinder of all members individually is impracticable." Fed. R. Civ. P. 23(a)(1).  The Tenth Circuit has not adopted a certain minimum number for numerosity. *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006). Rather, the question of numerosity is a fact-specific inquiry within the broad discretion of the district court. *See, e.g., Brayman v. Keypoint Gov't Sols., Inc*., 595 F. Supp. 3d 983, 996 (D. Colo. 2022) (finding allegation of approximately 140 class members satisfies the numerosity requirement).  Here, the potential size of the class is in excess of 13,000 Amazon workers.  Given the number of workers at issue, the numerosity requirement has been satisfied.

**B. The typicality requirement is satisfied.**

The "typicality" requirement is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3).  Courts have fond the typicality requirement to be met when "the claims of the class representative and class members are based on the same legal or remedial theory." *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co*., 765 F.3d 1205, 1216 (10th Cir. 2014). Further, "[a] plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class." *Stanley v. Orthopedics*, No. Civ. A. 1:22-CV-01176, 2024 U.S. Dist. LEXIS 73951, at *11-12 (D. Col. Apr. 23, 2024) (citation omitted).  Here, the typicality requirement is satisfied because the legal theory supporting Plaintiffs' and the Class Members' legal claims are identical. *See, e.g., Sobolewski v. Boselli & Sons, LLC,* No. Civ. A. 16-CV-01573, 2017 WL 6945045, at *4 (D. Col. Nov. 15,

15

2017) (finding typicality where "Plaintiff's theory with respect to his personal state law claims is identical to that of the other potential class members[]").

In particular, Plaintiffs' COVID screening claims are typical of those of the Class Members because just like the Class Members, the Plaintiffs were (1) hourly paid employees of Amazon, (2) who were required to report to a designated location in Amazon facilities to complete COVID screenings, (3) were subject to the same screening policies and procedures, (4) performed the same screening pursuant to Amazon's policy, and (5) are alleging that they were not paid for all of the time spent working as a result of the COVID screening.  These are the same facts and claims for the Class Members.

Similarly, Plaintiff Grumet's secondary screening claim is typical of those of the Exit Screening Class Members because just like the Class Members, Plaintiff Grumet (1) worked at an Amazon fulfillment center in Colorado, (2) was required to complete a secondary screening, (3) performed the secondary screening pursuant to the same policies as the Class Members, and (4) she and the Class Members are asserting that they were not paid for the time spent completing the secondary screenings. Thus, the typicality requirement has been satisfied.

### C. The adequacy requirement is satisfied.

The "adequacy" requirement is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed R. Civ. P. 23(a)(4). The "[a]dequacy of representation will be found where the named plaintiffs have no antagonistic or conflicting interests with those of the class and where class counsel is qualified, experienced and able to conduct the proposed litigation." *Queen Uno Ltd. P'ship v. Coeur D'Alene Mines Corp.*, 183 F.R.D. 687, 694 (D. Colo. 1998). In examining whether the Plaintiffs and their

counsel are adequate representatives, the Court must decide: (1) whether the Plaintiffs and their counsel have any conflicts of interest with the Class Members; and (2) whether the Plaintiffs and their counsel will prosecute the action vigorously on behalf of the Class. *See Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 126 (D. Colo. 2016). "Absent evidence to the contrary, a presumption of adequate representation is invoked." *Id.*

Here, the adequacy requirement is satisfied. Plaintiffs are not pursuing any claims that conflict with the claims of the Class Members. To the contrary, Plaintiffs' interests are perfectly aligned with those of the Class Members as they are suing for the same damages arising out of the same course of conduct.  Further, no evidence exists of any conflict of interest and Plaintiffs have fully participated in discovery, providing answers to interrogatories, responses to requests for production, and appearing for their depositions.[64] The Plaintiffs are committed to this case and will consider the interests of the Class Members for their own interests.[65]

Similarly, Plaintiffs' Counsel satisfy the adequacy requirement.  Plaintiffs' Counsel have vigorously pursued this action and have invested significant resources in this case, including taking depositions, retaining an expert statistician, and actively advancing discovery.  Plaintiffs' Counsel will continue to vigorously prosecute this case on behalf of the Class Members and Plaintiffs' Counsel have the knowledge, experience, and the resources to advance the Class Members' interests.[66] *Neiberger v. Hawkins*, 208 F.R.D.

---

[64] Ex. "15" and "16" – Depositions of Jennifer Vincenzetti and Alicia Grumet.

[65] Ex. "4" and "5" – Declarations of Jennifer Vincenzetti and Alicia Grumet.

[66] Ex. "1" – Declaration of Don Foty; Ex. "2" – Declaration of Brian Gonzales; Ex. "3" – Declaration of Alex Hood.

301, 316 (D. Colo. 2002) ("The criteria for assessing whether the lead plaintiffs will adequately represent the class include whether they have common interests with the members of the potential class and whether they will vigorously prosecute the interests of the class through qualified counsel."). Accordingly, the adequacy requirement has been satisfied.

### D.  The commonality requirement is satisfied.

The "commonality" requirement asks whether "questions of law or fact [are] common to the class." Fed R. Civ. P. 23(a)(2). The commonality "bar is not a high one," *Rodriguez v. National City Bank*, 726 F.3d 372, 382 (3rd Cir. 2013) and only requires "a finding of [] a single question of law or fact common to the entire class." *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018).[67] Indeed, "[i]t is not necessary that all of the elements of the claim entail questions of fact and law that are common to the class, nor that the answers to those common questions be dispositive." *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014), *citing Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455 (2013).

Here, Rule 23(a)(2)'s commonality requirement is easily satisfied because Plaintiffs and the Class Members are bound together by two common legal issues: (1) whether the time spent completing COVID screenings is compensable under Colorado law, and (2) whether the time spent completing the secondary screenings is compensable under Colorado law. As will be further explained, commonality is easily satisfied in this case.

---

[67] "Even a single common question will satisfy commonality." *Bilinsky v. Gatos Silver, Inc.*, Civil Action No. 22-cv-00453-PAB-KAS, 2024 U.S. Dist. LEXIS 35576, at *14 (D. Colo. Feb. 29, 2024); *D.G. ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010) (commonality "requires only a single question of law or fact common to the entire class[]").

1. **Commonality is satisfied because Plaintiffs challenge Amazon's policies that affected all Class Members.**

In wage and hour cases, like the present case, the commonality requirement is usually satisfied when "the plaintiffs allege that the defendant[] had a common policy or practice of unlawful labor practices." *Payne v. Tri-State CareFlight, LLC*, 332 F.R.D. 611, 692 (D.N.M. 2019) (internal quotation marks and citations omitted); *see also Lozoya v. AllPhase Landscape Construction, Inc*., No. Civ. A. 12-cv-1048-JLK, 2015 WL 1524639, at * (D. Colo. Mar. 31, 2015) (finding commonality "because the issues of what Defendant's policies were and whether they were illegal are common to the class") (citing J.*B. v. Valdez*, 186 F.3d 1280, 1288 (10th Cir. 1999)).

Here, Plaintiffs challenge Amazon's screening policies that affected all Class Members. First, Plaintiffs claim that the time spent waiting in line and completing the COVID screening is compensable under Colorado law.  Second, Plaintiffs claim that the time spent waiting in line and completing the secondary screening is compensable under Colorado law.  Each of these claims challenges a specific policy of Amazon that affected all Class Members in precisely the same way.

Plaintiffs' claims implicate common questions of law and fact because they are premised on Amazon's COVID screening and exist screening policies that applied to all Class Members. All Class Members were non-exempt hourly employees at Amazon sites, and thus they share several common legal questions, including: (1) whether the time spent waiting to be screened is compensable under Colorado law; and (2) whether the time spent being screening is compensable under Colorado law. *See, e.g., Sobolewski*, 2017 WL 6945045, at *3 (D. Colo. Nov. 15, 2017), report and recommendation adopted, No. 16-CV-01573-RM-STV, 2018 WL 3838140 (D. Colo. June 13, 2018) (certifying class

19

to pursue meal break and rest break claims under Colorado wage laws where defendant utilized the same time-keeping system for all employees and had a uniform policy regarding how breaks were compensated).

In this case, if Amazon's screening policies are found to be unlawful, each Class Member will have been injured by Amazon's conduct. Plaintiffs' allegations challenging Amazon's screening policies form the basis of each Class Member's claims, and thus, commonality is satisfied. *See, e.g.*, *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig., PNC Bank NA*, 795 F.3d 380, 397 (3rd Cir. 2015) ("[A]s long as all putative class members were subjected to the same harmful conduct by the defendant, Rule 23(a) will endure many legal and factual differences among the putative class members.").

### 2. <u>Commonality is also satisfied because Plaintiffs' claims can be resolved through common evidence.</u>

A "common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016). Here, there is generalized, class-wide proof that can prove the claims of all Class Members.  Amazon maintains internal data identifying when each employee clocked in and out.   Further, Amazon maintains internal data identifying when each employee entered the Amazon facility and completed a COVID screening.   And finally, Amazon has data identifying when each employee completed a secondary security screening.  With this information, Plaintiffs are able to identify for each Class Member (1) when they entered an Amazon facility, completed a COVID screening, and clocked in, and (2) when they clocked out and completed a secondary screening. Thus, when each Class Member performed worked off the clock and for how long can be calculated using this common evidence.  The

20

commonality requirement has been satisfied.

### E. The predominance requirement is satisfied.

Rule 23's "predominance" requirement is satisfied when "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed R. Civ. P. 23(b)(3). This predominance inquiry asks "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc.*, 577 U.S. at 453.

### 1. There are four principles that govern the predominance analysis.

The Supreme Court has explained the rules applicable to any predominance analysis. These rules are summarized below:

***First***, predominance does not require a finding that every issue in a lawsuit be resolved through common evidence. As the Supreme Court explained:

> When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

*Id*. at 453 (internal quotation and citation omitted)

And the Tenth Circuit has held that, "[c]ritically, so long as at least one common issue predominates, a plaintiff can satisfy Rule 23(b)(3)....". *Harrel's LLC, v. Chaparral Energy, LLC (Naylor Farms, Inc.)*, 923 F.3d 779, 789 (10th Cir. 2019) (citations omitted).

***Second***, as reflected in the above passage from *Tyson Foods*, predominance is not defeated by arguments that determining class members' damages may require individualized inquiry. *See, e.g., Tyson Foods*, 577 U.S. at 453 (predominance found

"even though other important matters will have to be tried separately, such as damages");
*In re Suboxone Antitrust Litig*., 967 F.3d 264, 272 (3rd Cir. 2020) ("Although allocating the damages among class members may be necessary after judgment, such individual questions do not ordinarily preclude the use of the class action device.").

**Third**, in class action litigation seeking wages for unpaid work hours, employers cannot defeat predominance based on purported "individualized" issues caused by the employer's own failure to maintain timekeeping records. This rule is further exemplified by the Supreme Court's *Tyson Foods* opinion. There, food processing employees alleged that time spent "donning and doffing" protective gear at the beginning and end of the workday was compensable under the Fair Labor Standards Act and Iowa wage law. The employer opposed class certification, arguing that "person-specific inquiries into individual work time predominate over the common questions raised by respondent's claims, making certification improper." *Tyson Foods*, 577 U.S. at 454. The Supreme Court rejected this argument, observing that any such complexities were caused by the employers' own failure to record the donning and doffing time and that employees should not be "punish[ed]" for the employer's lack of records. *See id*. at 456-57.

**Fourth**, Rule 23(b)(3) does not require the plaintiffs to prove "that the predominating question will be answered in their favor." *Amgen Inc. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 468 (2013). Put differently, the class certification stage is not the place for a decision on the merits.

In light of these principles, Colorado courts find predominance simply when the lawsuit challenges a common pay policy applicable to the entire class. In such cases, predominance is found notwithstanding purportedly "individualized" differences among

22

the class members. *See, e.g., Gamboa v. Kiss Nutraceuticals*, 777 F. Supp. 3d 210 (D. Colo. 2025) (granting class certification for unpaid wage claim under Colorado law); *Conejo v. Malwitz*, No. Civ. A. 1:24-CV-232-CNS-NRN, 2025 U.S. Dist. LEXIS 151597 (D. Col. May 12, 2025) (same); *Green v. Perry's Rests. Ltd*., No. Civ. A. 1:21-CV-23, 2024 U.S. Dist. LEXIS 228660 (D. Colo. Dec. 18, 2024) (same).

## 2.    The predominance requirement is satisfied because Plaintiffs challenge Amazon's uniform screening policies.

In ruling on predominance under Rule 23(b)(3), the Court should determine "whether the members of the class seek a remedy to a common legal grievance and whether the common questions of law and fact central to the litigation are common to all class members." *See Pliego*, 313 F.R.D. at 127 (citation omitted). "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject to only individualized proof." *Id*.; *see also Bustillos v. Bd. of Cty. Comm'rs of Hidalgo Cty*., 310 F.R.D. 631, 658 (D.N.M. 2015) ("a case need not present only common questions to merit certification, and the presence of some individual questions does not destroy predominance"). Importantly, "it is not necessary that all of the elements of the claims entail questions of fact and law that are common to the class nor, that the answers to those common questions be dispositive." *Felps v. Mewbourne Oil Co., Inc.*, 336 F.R.D. 664, 675 (D.N.M. 2020).

Here, Amazon's screening policies predominate over any individualized issue, as the claims asserted by Plaintiffs and the Class Members all arise from Amazon's COVID screening policy and exit screening policy.    The legality of these corporate policies predominates over any individualized issue and serves as a common fact uniting the

23

Plaintiffs' individual claims and the claims of the Class Members. Indeed, the legality of Amazon's policies is the veritable "elephant in the room." The success or failure of the claims turn on the outcome of a dominant legal issue: is the time spent completing COVID screenings compensable under Colorado law.  If the answer is "yes," then every COVID Class Member is entitled to compensation. Similarly, is the time spent completing secondary screenings compensable under Colorado law. If the answer is also "yes," then every Exit Screening Class Members is entitled to compensation. As the Supreme Court has observed, class litigation is "'particularly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano*, 442 U.S. at 701). So it is here.

It is anticipated that Amazon will argue that the precise amount of time spent off-the-clock as a result of the screenings is individualized and the amount of time spent by any one Class Member varied. However, these arguments go to the amount of damages owed to each Class Member, and individualized questions regarding the amount of damages do not defeat class certification. *See Sherman v. Trinity Teen Sols., Inc.*, 84 F.4th 1182, 1195 (10th Cir. 2023) (a finding that determining damages would necessitate individualized inquiries ... cannot alone sustain the ... conclusion that [a] proposed class fails Rule 23(b)(3)'s predominance requirement"); *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 922–23 (10th Cir. 2018) ("The presence of individualized damages issues does not defeat the predominance of questions common to the [purported] class"); *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1255 (10th Cir. 2014) (same).

Nevertheless, Plaintiffs' expert – Dr. Steward – is able to identify when each Class Member worked off-the-clock as a result of the screenings and the amount of damages each Class Member is owed using the records and data Amazon produced in discovery. In light of these facts, the preponderance requirement of Rule 23(b)(3) has been satisfied.

### F. The superiority requirement is satisfied.

Rule 23(b)(3) is concerned with the "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Here, class treatment is clearly superior to any other method of resolving Plaintiffs' claims.

First, Plaintiffs' and the Class Members' claims are based on common policies, such that they can be most efficiently litigated on a class-wide basis. Second, the alternative to a class action—filing of over 13,000 claims seeking relatively low amounts of damages—would be unrealistic and would unduly burden the Court. Third, the Class Members are hourly employees with limited resources. There is a strong likelihood that individual actions would never be brought and in fact, would be cost prohibitive for them. The only practical way for the Class Members to recover the amount owed to them is through a class action. For these reasons, the superiority requirement has been met.

<u>**CONCLUSION**</u>

For these reasons, Plaintiffs ask that the Court grant this Motion for Class Certification.

Dated: June 12, 2026

Respectfully submitted,

By:  /s/ Don J. Foty
Don J. Foty
Foty Law Group, P.C.
2 Greenway Plaza, Suite 250
Houston, TX 77046
Telephone: (713) 523-0001
Facsimile: (713) 523-1116
dfoty@fotylawgroup.com

and

Alexander N. Hood
David H. Seligman
Brianne M. Power
Towards Justice
Po Box 371680, PMB 44465
Denver, Co 80237-5680
720-441-2236
alex@towardsjustice.org
david@towardsjustice.org
brianne@towardsjustice.org

and

Brian D. Gonzales
The Law Offices of Brian D. Gonzales
2580 East Harmony Road, Suite 201
Fort Collins, Colorado 80528
(970) 214-0562
BGonzales@ColoradoWageLaw.com

Attorneys for Plaintiffs and Class Members

## CERTIFICATE OF SERVICE

I certify that this document was served on all parties of record via the District of Colorado CM/ECF system on June 12, 2026.

By: /s/ Don J. Foty
Don J. Foty

26

## <u>CERTIFICATE OF CONFERENCE</u>

This is to certify that Plaintiffs' Counsel has conferred with Counsel for Amazon and Amazon is opposed to this Motion.

By: *<u>/s/ Don J. Foty</u>*
Don J. Foty

27